hSAUNDERS, J.,
concurring with reasons.
I agree with the majority’s decision to reverse the trial court’s judgement authorizing Laura to move to New Jersey. However, because I find that Laura’s move is in good faith and not in the best interest of the child, I must concur with reasons.
As the majority has stated, a relocating parent has the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child. La.R.S. 9:355.13. In making a determination regarding a proposed relocation, a court must consider the factors specified in La.R.S. 9:355.12. The factors enumerated by La.R.S. 9:355.12 are as follows:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
|;>(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.

Good Faith

Under La.R.S. 9:355.13, we first determine whether a parent’s planned relocation is in good faith. In Pittman v. Pittman, 94-952 (La.App. 5 Cir. 3/15/95); 653 So.2d 1211, writ denied, 95-1526 (La.9/29/95); 660 So.2d 881, the fifth circuit recognized that improved job prospects of the relocating parent are important to establishing good faith. Similarly, I think it unjust to restrict a person’s desire to pursue his or her career in another state. After reviewing the record, I find that although Laura’s move may be in good faith, it is not in the best interest of the child.
Although Laura indicated that she has yet to secure a position in New Jersey, she testified that her training allows her to pursue employment starting at approximately eighteen dollars per hour as opposed to approximately eight dollars where she currently resides.
Furthermore, the record indicates that she has family in the New Jersey area. Specifically, Laura testified that she would like to be closer to her father who has suffered a stroke and continues to suffer heart problems. Moreover, she testified that her mother and sister, who also live nearby, would be able to help with child care and other needs.
I am not prepared to declare that a trial court faced with information regarding improved job prospects, ill family members, and increased family support committed *381 manifest error in finding that a parent’s desire to relocate is in good faith. Thus, I would affirm this finding by the trial court. As a result, my decision to reverse would turn on the issue of Jessica’s best interest,

J^Best Interest of the Child

Under La.R.S. 9:355.13, the parent seeking relocation must also prove that the proposed relocation is in the best interest of the child. La.R.S. 9:355.12 sets forth the factors that a court shall consider when determining the best interest of the child. Although the trial court concluded that the move was in the best interest of Jessica, in reaching its conclusion the trial court failed to expressly analyze factors enumerated in La.R.S. 9:355.12. Thus, I will now individually consider these factors.

(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child’s life.

The record indicates that Jessica has spent the majority of her life in the Opel-ousas area were she has extended family that she visits with some regularity. Furthermore, the record shows that, although Rachael did secrete Jessica for an extended period of time, Rachael has since complied with court orders and has made all reasonable efforts to maintain a strong relationship with Jessica.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.

At trial, Jane Hyde, a clinical social worker, testified with regard to Jessica’s relationship with her father. Ms. Hyde stated that her first visit with Jessica and Rachael took place in her office on October 17, 2000. She also had two subsequent in-home visits on November 8, 2000, and December 6, 2000. Finally, she had a follow-up contact for approximately one and one-half hours on May 18, 2001.
Ms. Hyde testified that Rachael provided a clean and child-oriented home for [Jessica. Ms. Hyde further stated that she was very impressed with the interaction between parent and child, she was very impressed with Rachael’s parenting skills, and the interaction between parent and child was indicative of a very close relationship between Rachael and Jessica. Ms. Hyde further noted that this was one of the most beautiful in-home visits that she has ever had. Finally, Ms. Hyde recommended that, if Laura decided to move to New Jersey, Jessica should remain in Opelousas with her father and extended family.
With regard to education, Rachael testified that it is his intention to provide, at his own expense, Jessica with the best education possible.

(S) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

The reality is that if Jessica were to move to New Jersey with her mother, she would be a considerable distance from her father. Thus, from a logistic and a financial standpoint, preserving the relationship between Rachael and Jessica would become very difficult. Furthermore, as opined by Ms. Hyde, Jessica has a significant bond with her father, and that bond should not be compromised by the vast distance between Opelousas and New Jersey. It must also be noted the record demonstrates that although Jessica and Rachael have established a strong bond, Laura has been less than helpful in foster *382 ing this relationship. Accordingly, I would find that, due to the great distance between New Jersey and Opelousas and Laura’s less than cooperative nature, the relationship between Jessica and Rachael would be very difficult to preserve.
(ti The child’s preference, taking into consideration the age and maturity of the |fi child.
Upon review of the record, I find no indication that Jessica has a preference between Laura and Rachael.

(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.

The record indicates that Laura has not always been cooperative in supporting the relationship between father and daughter. Despite their agreement to the contrary, Laura has limited telephone conversations between Rachael and Jessica and has refused visitation at times. I find that Laura’s conduct demonstrates a pattern that would hinder the relationship between Rachael and Jessica.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

Although Laura’s move may be in good faith, I find that such a move by Jessica would not enhance her general quality of life. For the majority of Jessica’s life she has lived in the Opelousas area and has established a strong relationship with her father as well as her extended family in the area. Furthei’more, Rachael has demonstrated an intent to provide Jessica with a quality education and nurturing home. Thus, I find that the detriment to Jessica’s relationships in Louisiana would outweigh any benefits that a move to New Jersey would provide.

(7) The reasons of each parent for seeking or opposing the relocation.

As expressed by Laura, the reasons that she is seeking relocation are that she wants to be closer to her family and obtain more gainful employment. While I accept Ifithe trial court’s finding to this effect, I also note that Rachael contends that Laura’s motive is to distance his daughter from him, and there is some support for this contention. Rachael’s reasons for opposing relocation are clear. He wants to be close to his daughter in order to maintain a strong bond with her as well as provide a stable home for her.

(8) Any other factors affecting the best interest of the child.

This encompasses each unique circumstance which may pertain to individual cases. I note no such circumstance in this case.
Accordingly, I find that the trial court erred by failing to apply an analysis of the above factors to its findings of fact when rendering its decision. My review of the foregoing factors and evidence leads me to conclude that it is in the best interest of Jessica to remain in Louisiana. The evidence establishes that Jessica has a close and nurturing relationship with her father as well as her extended family in Louisiana. The record further establishes that Rachael is capable of providing both financially and emotionally a quality home for Jessica. Moreover, the distance from New Jersey to Opelousas would be detrimental to this relationship as well as strain each family financially. Accordingly, after reviewing the factors required under La.R.S. 355.12, I find that relocation is not in the best interest of Jessica.
For the reasons stated, I find that, although Laura’s decision to relocate is in
*383 good faith, it is not in the best interest of the child. Accordingly, I would reverse the decision of the trial court based on the failure to prove best interest of the child.